## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KONSTANTIN SEMENCHENKO, | |
| *Plaintiff*, | |
| v. | Civil No.: **1:25-cv-01044-JRR** |
| **OFFICER GREGORY BROWN**, *et al.*, | |
| *Defendants*. | |

## MEMORANDUM OPINION

Pending before the court is Defendant Town of Elkton, Maryland's Partial Motion to Dismiss with Prejudice, or, in the Alternative, to Bifurcate and Stay Discovery. (ECF No. 15; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[1]

On January 6, 2023, Plaintiff Konstantin Semenchenko was walking in the neighborhood in which he resided with his parents. (ECF No. 1 ¶¶ 14–15.) While on his walk, he "suffered a medical emergency, most likely a seizure, which significantly incapacitated him and caused him to fall to the ground on the sidewalk." *Id.* ¶ 16. During this time, he was "physically weak and unable to communicate or move." *Id.* ¶ 17. Defendant Officer Gregory Brown of the Elkton Police Department responded to the scene following a 911 call by a "concerned passerby" who sought to procure a welfare check for Plaintiff. *Id.* ¶¶ 18–20. When Defendant Officer Brown arrived, Plaintiff "was lying on the ground, hardly moving and unable to communicate"; any attempted

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

speech "was noticeably slurred and plainly indicative of a medical emergency." *Id.* ¶ 24. Contrary to the Town of Elkton policies and procedures, Defendant Officer Brown did not notify Plaintiff that the interaction was being audio and visually recorded by his body-worn camera. *Id.* ¶ 26. At no time was Defendant Officer Brown investigating Plaintiff for any potential violation of law. *Id.* ¶ 27.

Upon approaching Plaintiff, Defendant Officer Brown "immediately proceeded to antagonize and physically assault Mr. Semenchenko." (ECF No. 1 ¶ 30.) He did not identify himself as a police officer and asked Plaintiff "What's going on?" and "Are you alright?" *Id.* ¶ 31. "Despite knowing that Mr. Semenchenko was in medical distress and lacking any knowledge of his actual condition, and despite EMS already being en route to provide aid, Defendant Ofc. Brown then decided to physically engage with Mr. Semenchenko's person by pressing his fist into Mr. Semenchenko's chest." *Id.* ¶ 34. Defendant Officer Brown's action has no legal or medical justification. *Id.* ¶ 36. After doing so, Plaintiff became "agitated." *Id.* ¶ 38. Plaintiff remained unable to communicate or answer Defendant Officer Brown's questions. *Id.* ¶ 40. Plaintiff was similarly unable to comply with Defendant Officer Brown's command that he "sit upright," and thus "repeatedly fell over." *Id.* ¶¶ 43–44. Defendant Officer Brown then again "forcefully pressing his balled-up fist into Mr. Semenchenko's chest, despite having no legal or medical justification to do so." *Id.* ¶ 45. He then again "dug his fist into Mr. Semenchenko's chest and told him to sit up." *Id.* ¶ 47.

Plaintiff attempted to stand numerous times, although Defendant Officer Brown instructed him to "sit up, but not stand up." (ECF No. 1 ¶¶ 48–50.) Once he managed to remain standing, Plaintiff attempted to walk away. *Id.* ¶ 51. Defendant Officer Brown then, with no legal justification and without identifying himself as a police officer or telling Plaintiff that he was under

arrest, "grabbed Mr. Semenchenko from behind, unlawfully seizing him." *Id.* ¶¶ 54–55.  Plaintiff then turned around and Defendant Officer Brown "immediately tackled him to the ground, forcibly flipped him onto his stomach, and then violently and illegally dug his knee into Mr. Semenchenko's back and neck," before ultimately attempting to handcuff him. *Id.* ¶¶ 57–58. "Despite having Mr. Semenchenko fully subdued and under control, Defendant Ofc. Brown continued to violently hold Mr. Semenchenko on the ground and apply excessive force by keeping his knee pressed into Mr. Semenchenko's back." *Id.* ¶ 60.

Other officers later appeared at the scene, including Defendant Corporal Jeremy Fuller, whereupon Defendant Officer Brown falsely stated that the "Motherfucker swung at me." (ECF No. 1 ¶¶ 62–63.) Defendant Corporal Fuller then "placed his knee into Mr. Semenchenko's lower back area, continuing Mr. Semenchenko's illegal detention, assault, false arrest, and attempted handcuffing," while Defendant Officer Brown "was shoving Mr. Semenchenko's face into the ground, applying downward pressure on Mr. Semenchenko's neck and throat, further exacerbating his pain and distress." *Id.* ¶¶ 64–65. As a result of Defendant Corporal Fuller and Defendant Officer Brown's actions, Plaintiff suffered "an acute burst fracture at T3, with prolapsed fragments." *Id.* ¶ 72. Plaintiff experienced extreme pain and screamed out in distress, but the officers at the scene continued to hold him, and Defendant Corporal Fuller told him to "Stop squirming and you wouldn't be in so much fucking pain." *Id.* ¶¶ 74–77. According to Plaintiff, and contrary to Defendant Officer Brown's alleged statement made at the scene to Defendant Corporal Fuller:

> Defendant Ofc. Brown's body-worn camera footage conclusively establishes that Mr. Semenchenko never once attempted to assault him, let alone make physical contact with him, and that Defendant Ofc. Brown's actions and use of force were unlawful, unconstitutional, excessive, undertaken with malice, and in direct

contradiction to both his training and official duties, and Mr. Semenchenko's constitutional protections and rights.

*Id.* ¶ 80.  Plaintiff was eventually transported via ambulance to Union Hospital before being transferred to Christiana Care Hospital.  *Id.* ¶¶ 83–84.

Despite not having committed any criminal act, Plaintiff was charged with one count of Assault in the Second Degree and one count of Resisting Arrest.  (ECF No. 1 ¶ 91.)  He was acquitted of both charges on March 20, 2024.  *Id.* ¶ 92.

As to Town of Elkton, Plaintiff alleges:

> 86. Defendant Town of Elkton failed to properly train Defendant Ofc. Brown on how to respond to medical emergencies or Defendant Ofc. Brown neglected to follow his training.
>
> 87. Defendant Town of Elkton failed to properly train Defendant Ofc. Brown in necessary de-escalation techniques, or Defendant Ofc. Brown neglected to follow his training.
>
> 88. Defendant Ofc. Brown did not follow proper protocols and procedures for handling such an incident, demonstrating either a lack of training by Defendant Town of Elkton or a willful disregard for departmental protocols and procedures.
>
> .          .          .
>
> 94. Despite Defendant Ofc. Brown's misconduct, the Town of Elkton and the Elkton Police Department refused to discipline him and, instead, promoted him.
>
> .          .          .
>
> 98. Defendant Town of Elkton is vicariously liable for the tortious acts and omissions of Defendant Ofc. Brown, Defendant Cpl. Fuller, and all other responding officers, via the doctrine of respondeat superior, as all of them were under the employ of Defendant Town of Elkton at all times relevant to this action
>
> .          .          .

108. Defendant Town of Elkton, through its policies, customs, and practices, permitted and condoned unconstitutional conduct, leading directly to the violations suffered by Plaintiff.

.        .        .

120. The unjustified and unlawful behavior and conduct of Defendant Ofc. Brown, Cpl. Fuller, and the other unknown Officers, both during the incident and in its aftermath—including the preparation of a criminal charging document containing false testimony sworn out under oath—are a direct result of the customs, policies, patterns and practices within the Town of Elkton."

.        .        .

133. The Town of Elkton and the Elkton Police Department directly caused these constitutional violations by enacting, endorsing, or perpetuating policies, practices, or customs that encouraged or permitted Officers to unlawfully seize and arrest the Plaintiff without probable cause, thereby depriving him of his constitutional rights.

(ECF No. 1 ¶¶ 86–88, 94, 98, 108, 120, 133.)

Plaintiff initiated this action on March 31, 2025, asserting the following counts:

Count I: Unlawful Search and Seizure, Excessive Use of Force, and Improper Use of Police Powers in Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 against all Defendants;

Count II: Unlawful Search and Seizure, Excessive Use of Force, and Improper Use of Police Powers in Violation of Articles 24 and 26 of the Maryland Declaration of Rights against all Defendants;

Count III: Battery against all Defendants;

Count IV: False Arrest against all Defendants;

Count V: False Imprisonment against all Defendants;

Count VI: Intentional Infliction of Emotional Distress against Defendants Officer Brown and Town of Elkton;

Count VII: Negligent Hiring, Training, Retention, and Supervision against Defendant Town of Elkton;

Count VIII: Negligence against all Defendants;

Count IX: Gross Negligence against all Defendants;

Count X: Malicious Prosecution against Defendants Officer Brown and Town of Elkton;

Count XI: Civil Conspiracy against all Defendants; and

Count XII: Cruel and Unusual Punishment in Violation of the Eighth Amendment and Article 16 of the Maryland Declaration of Rights against all Defendants.

(ECF No. 1 ¶¶ 123–279.)  Thereafter, on June 24, 2025, Defendant Town of Elkton filed the instant Motion seeking partial dismissal of the claims against it, specifically Counts I, III, IV, V, VI, VII, VIII, IX, X, and XI.[2]  (ECF No. 15.)  It also seeks bifurcation of any remaining claims against it, and a stay of related discovery, until disposition of Plaintiff's claims against Defendants Officer Brown and Corporal Fuller.  *Id.*

## II.  **LEGAL STANDARD**

### A. **Federal Rule of Civil Procedure 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint."  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court

---

[2] Defendants Officer Brown and Corporal Fuller filed their Answers to Plaintiff's Complaint.  (ECF Nos. 11, 16.)

to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III.   **ANALYSIS**

Town of Elkton seeks partial dismissal of the claims against it, advancing arguments the court considers here, including: 1) Count XII is not cognizable under the Eight Amendment or Article 16 because Plaintiff was not subject to such protections as a pre-trial detainee; 2) Count I fails to plead a plausible *Monell* claim under 42 U.S.C. § 1983; 3) it is entitled to governmental immunity as to Plaintiff's non-constitutional state law claims (Counts III, IV, V, VI, VII, VIII, IX, X, and XI); and 4) any remaining claims against it should be bifurcated from the claims against the individual officer Defendants and discovery as to same should be stayed.[3] (ECF No. 15-1 at p. 3.) The court addresses each in turn.

---

[3] Town of Elkton also seeks dismissal of Plaintiff's civil conspiracy claim (Count XI) because it is not, on its own, an independent cause of action in Maryland. (ECF No. 15-1 at pp. 10–11.) Citing no legal authority, Plaintiff simply asserts that Town of Elkton is "incorrect." (ECF No. 19-1 at p. 12.) Because the court concludes Town of Elkton is entitled to governmental immunity on this count, it declines to reach its argument as to civil conspiracy.

### A. Count XII: Cruel and Unusual Punishment in Violation of the Eighth Amendment and Article 16 of the Maryland Declaration of Rights

The court turns first to Town of Elkton's argument that Count XII brought under the Eighth Amendment and Article 16 of the Maryland Declaration of Rights should be dismissed with prejudice because the claim is inapplicable here, where Plaintiff was never found guilty of any crime.[4] *See Seth v. McDonough*, 461 F. Supp. 3d 242, 258 (D. Md. 2020) ("Eighth Amendment protections extend to those detainees already found guilty of a criminal offense, whereas similar protections apply to pretrial detainees pursuant to the due process clause of the Fourteenth Amendment."). Plaintiff concedes this point and agrees the count should be dismissed. The court will therefore grant the Motion to the extent it seeks dismissal with prejudice of Count XII.

### B. Count I: Unlawful Search and Seizure, Excessive Use of Force, and Improper Use of Police Powers in Violation of the Fourth and Fourteenth Amendments

Town of Elkton further moves to dismiss Count I, brought pursuant to 42 U.S.C. § 1983, for failure to plead a plausible *Monell* claim, as Plaintiff's claim is based on vicarious liability, *see* ECF No. 1 ¶ 136, and because he fails to allege sufficiently any unconstitutional policy or widespread practice that resulted in violation of Plaintiff's constitutional rights, as alleged. (ECF No. 15-1 at pp. 6–7.) In response, Plaintiff concedes that Town of Elkton may not be held vicariously liable under § 1983, but asserts the Complaint sufficiently pleads failure to train, manage, and supervise its officers.[5] (ECF No. 19-1 at pp. 5–8.)

---

[4] Article 16 is "construed *in pari materia* with the Eighth Amendment." *Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023); *see Harris v. State*, 251 Md. App. 612, 649 n.19 (2021), *aff'd,* 479 Md. 84 (2022) (noting that Article 16 is generally "given the same interpretation as the Eighth Amendment" (citations omitted)).

[5] In the alternative, Plaintiff requests leave to amend his Complaint to add the requisite level of detail. (ECF No. 19-1 at p. 8.) Against the backdrop of Federal Rule of Civil Procedure 15(a)'s instruction that "[t]he court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Where Plaintiff does not identify any particular proposed amendments, including by way of a proposed amended pleading as contemplated by Local Rule 103.6, the court is unable to discern whether such amendment would be futile or

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979)). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under section 1983, a Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

In *Monell v. Department of Social Services*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). The Court explained that "[l]ocal governing bodies [] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief, where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* It cannot, however, "be held liable . . . under § 1983 on a respondeat superior theory." *Id.* at 691; *see Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1032 (D. Md. 2019) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

---

prejudicial in view of this court's opinion. Accordingly, the court will deny Plaintiff's request at this time; Plaintiff of course remains free to file a separate motion to amend his Complaint in accordance with Local Rule 103.6.

each Government-official defendant, through the official's own individual actions, has violated the Constitution." (citing *Iqbal*, 556 U.S. at 676)).

"[L]ocal governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986)). Accordingly, municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Indeed, for *Monell* liability to attached to a municipality, "a plaintiff must show that the municipality's policies were 'the moving force behind a deprivation of federal rights.'" *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023). Thus, a plaintiff seeking to impose liability on a county under § 1983 "must prove that 'action pursuant to official municipal policy' caused [his] injury." *Connick*, 475 U.S. at 60 (quoting *Monell*, 436 U.S. at 691).

*Monell* claims have three essential elements: (1) identification of a specific "policy or "custom"; (2) attribution of the policy, and fault for its creation, to the municipality; and (3) an "affirmative link" between an identified policy or custom and a specific rights violation. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). To assert a *Monell* claim, a plaintiff must "adequately plead . . . the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A policy or custom that purports to give rise to liability will "not, however, 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230

(4th Cir. 1984)).  The municipality's alleged conduct must demonstrate "'deliberate indifference' to the rights of its inhabitants."  *Id.* (quoting *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997)).

A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.[6]

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).  Based on Plaintiff's Complaint allegations and opposition to the Motion, the court construes Plaintiff's *Monell* claim to be based on theories of failure to train and failure to supervise and discipline.  (ECF No. 1 ¶¶ 86–88, 94; ECF No. 19-1 at pp. 5–8.)

"Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier."  *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 403 (4th Cir. 2014).  Still, while it is true that often "a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery" and that "courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers," "boilerplate allegations will not suffice."  *Saltz*, 538 F. Supp. 3d at 556–57.

### 1. *Vicarious Liability*

Despite asserting that Town of Elkton is vicariously liable to Plaintiff for its employee officers' actions that resulted in violation of his Fourth and Fourteenth Amendment rights, Plaintiff

---

[6] The fourth type is commonly referred to as a "condonation theory" of liability.

concedes in opposition that Town of Elkton may not be held vicariously liable under § 1983. (ECF No. 1 ¶ 136; ECF No. 19-1 at p. 5.) *See Monell*, 436 U.S. at 691 (holding that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) (explaining "'[t]he municipality itself, through one of its policies or customs,' must 'cause[] the constitutional violation; municipal liability cannot be premised on *respondeat superior* or vicarious liability'") (quoting *Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 122 (4th Cir. 1990)).

Accordingly, the Motion will be granted to the extent Plaintiff's § 1983 *Monell* claim in Count I is based on vicarious liability.

### 2. *Failure to Train*

"A municipality can also be liable for an established policy through a failure to train, if it reflects a deliberate or conscious choice to not do so." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 309 (D. Md. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).[7] "Training policy deficiencies can include (1) 'express authorizations of unconstitutional conduct,' (2) 'tacit authorizations' of such unconstitutional conduct, and (3) failures to adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *Johnson*, 452 F. Supp. 3d at 309 (quoting *Spell v. McDaniel,* 824 F.2d 1380, 1390 (4th Cir. 1987)). Ultimately, "[a] failure to train *Monell* theory requires a plausible demonstration that (1) the nature of the training was insufficient in some particularized manner; (2) the insufficiency of the training was a deliberate or

---

[7] "Although the procedural posture of this case distinguishes it from *Connick*, 563 U.S. 51 . . . , that case is pertinent, as it highlights the challenge a plaintiff faces when seeking to prevail on a failure to train claim." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 559 (D. Md. 2021).

conscious choice; and (3) a causal relationship existed between the failure-to-train and the injuries suffered." *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298 (D. Md. 2022).

"As to the first element, 'the plaintiff must point out a specific deficiency in training, rather than general laxness or ineffectiveness in training.'" *Id.* (quoting *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 533 (D. Md. 2020)); *see Spell*, 824 F.2d at 1390 ("[A] sufficiently close causal link must be shown between potentially inculpating training deficiency or deficiencies and specific violation.  This requires first that a specific deficiency rather than general laxness or ineffectiveness in training be shown.").  Conclusory or broad-sweeping allegations of deficient officer training that was a deliberate or conscious choice by the municipality and which resulted in unconstitutional officer conduct are insufficient to state a claim.  *See, e.g.*, *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2022 WL 846209, at *8 (D. Md. Mar. 22, 2022); *Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *3 (D. Md. Aug. 21, 2017); *Jones v. Chapman*, No. CIV.A. ELH-14-2627, 2015 WL 4509871, at *18–20 (D. Md. July 24, 2015); *Hall v. Fabrizio*, No. CIV. JKB-12-754, 2012 WL 2905293, at *2 (D. Md. July 13, 2012).

"Stating 'in broad, conclusory terms and in a variety of different ways that [an entity] failed to train and supervise its officers' will not suffice." *Brown v. Maryland*, No. CV SAG-25-01331, 2025 WL 2855770, at *4 (D. Md. Oct. 8, 2025) (quoting *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014)); *see McDowell v. Grimes*, No. CV GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018) (discussing same).  "[T]he municipality will only be liable if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Johnson*, 452 F.

Supp. 3d at 309 (quoting *Harris*, 489 U.S. at 390). Further, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989).

Here, Plaintiff pleads the following allegations in support of his claim based on a failure to train theory:

> 86. Defendant Town of Elkton failed to properly train Defendant Ofc. Brown on how to respond to medical emergencies or Defendant Ofc. Brown neglected to follow his training.
>
> 87. Defendant Town of Elkton failed to properly train Defendant Ofc. Brown in necessary de-escalation techniques, or Defendant Ofc. Brown neglected to follow his training.
>
> 88. Defendant Ofc. Brown did not follow proper protocols and procedures for handling such an incident, demonstrating either a lack of training by Defendant Town of Elkton or a willful disregard for departmental protocols and procedures.
>
> .          .          .
>
> 108. Defendant Town of Elkton, through its policies, customs, and practices, permitted and condoned unconstitutional conduct, leading directly to the violations suffered by Plaintiff.
>
> .          .          .
>
> 120. The unjustified and unlawful behavior and conduct of Defendant Ofc. Brown, Cpl. Fuller, and the other unknown Officers, both during the incident and in its aftermath—including the preparation of a criminal charging document containing false testimony sworn out under oath—are a direct result of the customs, policies, patterns and practices within the Town of Elkton."
>
> .          .          .
>
> 133. The Town of Elkton and the Elkton Police Department directly caused these constitutional violations by enacting, endorsing, or perpetuating policies, practices, or customs that encouraged or

permitted Officers to unlawfully seize and arrest the Plaintiff without probable cause, thereby depriving him of his constitutional rights.

(ECF No. 1 ¶¶ 86–88, 108, 120, 133.)

The court agrees with Town of Elkton that these allegations are insufficient to allege a plausible *Monell* claim based on a failure to train. Plaintiff's allegations are of the type this court has consistently found insufficient because they rely on "bald assertions that police officers were not properly trained." *McDowell*, 2018 WL 3756727, at *4. Initially, the court notes that Plaintiff's allegations, accepted as true, do not even concretely allege a failure to train on the part of Town of Elkton; instead, they allow that Defendant Officer Brown "neglected to follow his training." (ECF No. 1 ¶¶ 86–87.) These allegations are plainly not sufficient, as they fail even to allege that Town of Elkton, deliberately or consciously, utilized specific training, with an identified deficiency, that resulted in the deprivation of Plaintiff's constitutional rights. *See Palma*, 598 F. Supp. 3d at 298, *supra*.

Although Plaintiff alleges that Defendant Officer Brown was not properly trained on "how to respond to medical emergencies" or on "de-escalation techniques," ECF No. 1 ¶¶ 86–87, these allegations are nonetheless insufficient. Plaintiff does not identify any specific deficiency; instead, Plaintiff relies upon conclusory assertions that the medical emergency and de-escalation trainings were deficient. These are precisely the sort of generalized alleged deficiencies this court has repeatedly rejected. *See, e.g.*, *Jordan v. Mayor & City Council of Baltimore*, No. CV SAG-23-03413, 2024 WL 2956094, at *8–9 (D. Md. June 12, 2024) (finding plaintiff failed to adequately identify the nature of the training or specific deficiency where he alleged "a general failure to effectively instruct officers that they have a duty to prevent and report excessive force") (record citation omitted); *Simmons v. Baltimore City Police Dep't*, No. 21-CV-00969-LKG, 2023 WL

8452448, at *14 (D. Md. Dec. 6, 2023) (finding plaintiff's allegations of general laxness in "the training on [the municipality's] vehicle pursuit policy" insufficient); *Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *3 (D. Md. Aug. 21, 2017) (finding plaintiff's allegations insufficient where he stated "in conclusory terms that the County failed to adequately train, supervise, and discipline its officers against the use of excessive force") (record citation omitted).

Further, Plaintiff fails "to identify a specific omission and awareness on the part of the entity of the omission and the risks it posed; in other words, facts showing deliberation on the part of [Town of Elkton]." *Valentine v. PrimeCare Med., Inc.*, 697 F. Supp. 3d 431, 447 (D. Md. 2023). Instead, Plaintiff's allegations rest solely on the conclusory assertions noted above that Defendant Officer Brown was not properly trained (or failed to follow his training). An individual officer's lack of training "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). Plaintiff makes generalized (and vague) allegations about Town of Elkton's policies that allegedly resulted in officer unconstitutional conduct, and offers nothing in the way of Town of Elkton's officer training program or factual allegations linking a specific training deficiency to alleged constitutional violations.

In all, Plaintiff fails to allege plausibly a "*specific* deficiency" and that "deficiency's causal connection to 'the *specific* violation.'" *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) (emphasis in original) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Accordingly, Plaintiff's allegations, accepted as true, are insufficient to allege a plausible *Monell* claim based on a failure to train theory. The court will therefore grant Town of Elkton's Motion and dismiss Plaintiff's *Monell* claim to the extent it is based on failure to train.

### 3. *Failure to Supervise and Discipline*

This court has previously recognized what it has referred to as a "failure to supervise and discipline" theory of *Monell* liability. *Washington v. Baltimore Police Dep't*, 457 F. Supp. 3d 520, 536 (D. Md. 2020). "A failure to supervise gives rise to municipal liability 'only in those situations in which there is a history of widespread abuse.'" *Id.* at 536–37 (quoting *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)); *see Thompson v. Mediko, Inc.*, No. 1:24-CV-1736 (RDA/WBP), 2025 WL 2616966, at *15 (E.D. Va. Sept. 10, 2025) (same).

To state such a claim, a plaintiff must allege:

> (1) that the supervisor had 'actual or constructive knowledge' that a subordinate was engaged in conduct that 'posed a pervasive and unreasonable risk of constitutional injury'; (2) that the supervisor's response to that knowledge 'was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) an 'affirmative causal link' between the supervisor's inaction and the plaintiff' alleged constitutional injury.

*Cottman v. Baltimore Police Department, et al.*, No. 21-CV-00837-SAG, 2022 WL 137735, at *9–10 (D. Md. Jan. 13, 2022) (quoting *Brown v. Bratton*, No. ELH-19-1450, 2020 WL 886142, at *34 (D. Md. Feb. 21, 2020)); *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (same). Importantly, a plaintiff who fails "to allege widespread conduct by County employees that could support the inference that County policymakers were aware of and tacitly condoned" the unconstitutional conduct by failing to supervise or discipline their employees is insufficient to "nudge [a] *Monell* claim 'across the line from conceivable to plausible.'" *Brown*, 2020 WL 886142, at *35 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As explained above, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

Further, [i]t is not sufficient to state in 'broad, conclusory terms and in a variety of different ways' that the police department 'failed to train and supervise its officers.'" *Jordan v. Mayor & City Council of Baltimore*, No. CV SAG-23-03413, 2024 WL 2956094, at *9 (D. Md. June 12, 2024) (quoting *Peprah v. Williams*, Civ. No. GLR-18-990, 2019 WL 224245, at *6 (D. Md. Jan. 15, 2019)).

In support of his claim under such a theory, Plaintiff alleges:

> 94. Despite Defendant Ofc. Brown's misconduct, the Town of Elkton and the Elkton Police Department refused to discipline him and, instead, promoted him

> .           .           .

> 108. Defendant Town of Elkton, through its policies, customs, and practices, permitted and condoned unconstitutional conduct, leading directly to the violations suffered by Plaintiff.

> .           .           .

> 120. The unjustified and unlawful behavior and conduct of Defendant Ofc. Brown, Cpl. Fuller, and the other unknown Officers, both during the incident and in its aftermath—including the preparation of a criminal charging document containing false testimony sworn out under oath—are a direct result of the customs, policies, patterns and practices within the Town of Elkton."

> .           .           .

> 133. The Town of Elkton and the Elkton Police Department directly caused these constitutional violations by enacting, endorsing, or perpetuating policies, practices, or customs that encouraged or permitted Officers to unlawfully seize and arrest the Plaintiff without probable cause, thereby depriving him of his constitutional rights.

(ECF No. 1 ¶¶ 94, 108, 120, 133.)

The court, again, finds Plaintiff's allegations insufficient to state a claim under a failure to supervise and discipline theory. First, Plaintiff's complete failure to identify an individual who

acted in a supervisory capacity is itself "fatal" to Plaintiff's claim because the court "cannot ascertain whether the supervisor had actual or constructive knowledge of any improper conduct if the supervisor has not been identified." *Jordan*, 2024 WL 2956094, at *9; *see also Cottman*, 2022 WL 137735, at *9–10 (discussing the elements of a claim), *supra*.  Similarly, Plaintiff does not allege a widespread history of abuse necessary to raise a plausible inference that supervisors had actual or constructive knowledge of the allegedly unconstitutional conduct.  *See Washington*, 457 F. Supp. 3d at 536–37, and *Thompson*, 2025 WL 2616966, at *15, *supra*.  Further, where Plaintiff's allegations again rely on broad, conclusory allegations that Town of Elkton failed to supervise and discipline Defendant Officer Brown, the claim is insufficient.  *See, e.g.*, *Jordan*, 2024 WL 2956094, at *9 and *Peprah*, 2019 WL 224245, at *6, *supra*.

The court will therefore grant the Motion to the extent it seeks dismissal of Count I on the basis of a failure to supervise and discipline.  In view of the court's foregoing analysis, Count I will be dismissed in its entirety, without prejudice, as against Town of Elkton.

## C.  Counts III, IV, V, VI, VII, VIII, IX, X, and XI: Non-Constitutional State Law Claims

Finally, Town of Elkton argues that Plaintiff's non-constitutional state law claims—Counts III, IV, V, VI, VII, VIII, IX, X, and XI—should be dismissed with prejudice because, as a local government entity, it is immune from suit by operation of governmental immunity.  (ECF No. 15-1 at p. 8–10.)  Plaintiff urges the contrary—that Town of Elkton is not entitled to governmental immunity, citing *Jones v. State*, 425 Md. 1 (2012), and *Housing Authority of Baltimore City v. Bennett*, 359 Md. 356 (2000).[8]

"[T]he doctrine of governmental immunity is alive and well in Maryland today." *McCarthy v. Bd. of Comm'rs for Frederick Cnty.*, 266 Md. App. 134, 143 (2025) (quoting *Heffner*

---

[8] Plaintiff further asserts that governmental immunity is not applicable to his state constitutional claims, *see* ECF No. 19-1 at pp. 10–11; that is not in dispute here.

*v. Montgomery Cnty.*, 76 Md. App. 328, 333 (1988)).  "Under Maryland law, counties enjoy governmental immunity from tort liability with respect to 'nonconstitutional torts based on activity categorized as governmental.'"  *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011) (quoting *Housing Auth. of Balt. City v. Bennett,* 359 Md. 356 (2000)).  "[M]unicipalities are generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts."  *Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *2 (D. Md. Aug. 21, 2017); *see DiPino v. Davis*, 354 Md. 18, 47 (1999) (instructing that "[a] local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity").

Importantly, enactment of the Maryland Local Government Tort Claims Act ("LGTCA") "did not serve to create a cause of action against the local governments or their employees." *Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 640 (2015).  And, it "does not waive the [municipality's] common law governmental immunity in any extent more broad than its duty to indemnify employees." *Livesay v. Baltimore Cnty.*, 384 Md. 1, 20 (2004).  Accordingly, "the only actions which can be brought directly against a local government are those authorized by law which is separate and distinct from the LGTCA."  *Rounds*, 441 Md. at 640 (citation modified) (quoting *Williams v. Maynard*, 359 Md. 379, 394 (2000)); *see Nam v. Montgomery Cnty.*, 127 Md. App. 172, 184 (1999) ("Nowhere in the Act, however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts."); *Hicks v. Anne Arundel Cnty.*, No. CV JKB-20-0022, 2020 WL 7624773, at *5 (D. Md. Dec. 22, 2020) ("A Maryland statute provides that local governments

20

may be vicariously liable for the tortious acts or omissions of their employees, but this statute contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." (citations omitted)).

Based on the foregoing, Town of Elkton is entitled to governmental immunity as to Plaintiff's non-constitutional state tort claims. There is no dispute that Town of Elkton is a local government entity. *See, e.g.*, *Myers v. Town of Elkton, Maryland*, No. BPG-22-803, 2023 WL 2242870, at *9 (D. Md. Feb. 24, 2023). It is similarly beyond dispute that a local government entity's "operation . . . of its police department is quintessentially governmental." *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 558 (2013); *see, e.g.*, *Talley v. Anne Arundel Cnty., Maryland*, No. CV RDB-21-347, 2021 WL 4244759, at *5 (D. Md. Sept. 17, 2021) (same); *Devi*, 2017 WL 3592452, at *2 (same); *Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 583 (D. Md. 2016) (same); *Williams v. Prince George's Cnty., MD*, 157 F. Supp. 2d 596, 604 (D. Md. 2001) (same) (quoting *Hector v. Weglein,* 558 F. Supp. 194, 206 (D. Md. 1982)). Accordingly, because Plaintiff brings his non-constitutional Maryland tort claims against Town of Elkton, a local government entity, based on governmental activity, Town of Elkton is protected by governmental immunity. *See Paulone*, 787 F. Supp. 2d at 378, *supra*.

Plaintiff appears disagree with the well-settled state of the law as discussed above, but his asserted challenges are not supported by the authority he cites. First, Plaintiff relies on *Jones v. State*, 425 Md. 1 (2012). *Jones* is inapposite because it addressed suit against the state and application of the Maryland Tort Claims Act, not, as is at issue here, suit against a municipality and application of governmental immunity, with consideration of the LGTCA. As Town of Elkton correctly observes, the Appellate Court of Maryland has explicitly rejected Plaintiff's argument: "The appellants argue that *Jones v. State,* 425 Md. 1, 38 A.3d 333 (2012), changed the law of

immunities regarding common law tort claims for negligent hiring, retention, and supervision. They are incorrect. *Jones* did not involve allegations of common law tort liability against a *local government.* It involved allegations of common law tort liability against *the State of Maryland.*" *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 559 (2013) (emphasis in original). It continues: "The holding in *Jones* is not relevant to the issue of immunity of a local government against common law tort claims brought against it directly, in its own capacity, for governmental acts or omissions, including allegations of negligent hiring, training, or entrustment." *Id.* at 561.

Next, citing *Housing Authority of Baltimore City v. Bennett*, 359 Md. 356 (2000), Plaintiff asserts: "there are a number of instances where local government immunity has not been extended to the local government entity on tort related actions." (ECF No. 19-1 at p. 10.) *Bennett,* however, concerned "whether the damages cap provision applies to a judgment against a local government agency in a tort action which is authorized by another statute enacted by the General Assembly prior to the LGTCA and reenacted after the LGTCA." *Hous. Auth. of Baltimore City v. Bennett*, 359 Md. 356, 358 (2000). As Town of Elkton correctly states, the court's analysis did not turn on the applicability of governmental immunity, as it recognized an applicable waiver of such immunity. *Id.* at 359–61. No such waiver is present here.[9]

Plaintiff cites no authority that supports his contention that governmental immunity does not operate as set forth above. Based on the foregoing, the court will grant the Motion to the extent it seeks dismissal with prejudice of Counts III, IV, V, VI, VII, VIII, IX, X, and XI, as against Town of Elkton.

---

[9] Plaintiff also argues that Town of Elkton "fails to acknowledge" his Count VII, which does not rely on a theory of vicarious liability. (ECF No. 19-1 at p. 11.) This distinction is immaterial to Town of Elkton's argument and the court's related analysis.

### D. Alternative Request for Bifurcation

Finally, Town of Elkton moves to bifurcate any remaining claims against it (here, Count II, Plaintiff's Maryland Declaration of Rights claim), because "any municipal liability is secondary to a finding against the individual officers." (ECF No. 15-1 at p. 12.) Plaintiff opposes the request, arguing that judicial economy would not be served by bifurcation. (ECF No. 19-1 at pp. 13–14.)

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). "Notably, Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'" *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 561 (D. Md. 2021) (quoting *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)). The decision to bifurcate claims for trial is committed to the court's "broad discretion." *Id.* (quoting *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010)).

Federal Rule of Civil Procedure 26(d)(1) further provides:

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

FED. R. CIV. P. 26(d)(1).

Where Plaintiff's sole remaining claim against Town of Elkton is Count II, which will progress on a theory of vicarious liability, the court is not persuaded that bifurcation is warranted at this time. The court discerns no prejudice to be avoided, or economy to be served, by bifurcation. The cases Town of Elkton cites rely on the unique nature of *Monell* liability under § 1983, which is no longer at issue in view of the court's ruling. The court has repeatedly recognized that § 1983 *Monell* claims are good candidates for bifurcation, but Town of Elkton does not

persuade the court that the same ends would be served by bifurcation in the absence of such a claim. Instead, it may cause needless delay.

Accordingly, the court will deny the Motion to the extent it seeks bifurcation and a related stay of discovery as to Plaintiff's remaining claim against Town of Elkton.

IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion will be granted in part and denied in part. It will be granted to the extent it seeks dismissal of Counts I, III, IV, V, VI, VII, VIII, IX, X, XI, and XII against Town of Elkton and denied in all other respects.[10]

February 6, 2026                                  /s/_____
                                                 Julie R. Rubin
                                                 United States District Judge

---

[10] Based on the posture of the case, and the relevant immunity doctrine at issue, the court finds dismissal without prejudice is warranted as to Count I as against Town of Elkton, and dismissal with prejudice is warranted as to Counts III, IV, V, VI, VII, VIII, IX, X, XI, and XII as against Town of Elkton. *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (noting that "the nature of dismissal" is left "to the sound discretion of the district court").